UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

HOLLY STEELE, on behalf of M.D.,

**REPORT AND
RECOMMENDATION**

                    Plaintiff,

09-CV-347
(NAM/VEB)

            V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

─────────────────────────────────────

## I. INTRODUCTION

In February of 2006, Plaintiff Holly Steele filed an application for Supplemental

Security Income ("SSI") benefits under the Social Security Act on behalf of her daughter,

M.D. ("Claimant"),[1] alleging disability due to Attention Deficit Hyperactivity Disorder

("ADHD"). The Commissioner of Social Security denied the application.

Plaintiff, through her attorneys, Olinsky & Shurtliff, Jaya Shurtliff, Esq., of counsel,

commenced this action on March 26, 2009, by filing a Complaint in the United States

District Court for the Northern District of New York.  Plaintiff seeks judicial review of the

Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this

case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. §

636(b)(1)(A) and (B). (Docket No. 14).

─────────────────────

[1]M.D. is a minor child.  Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil
Procedure, she will be referred to as "Claimant" in this Report and Recommendation.

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff is the mother of Claimant, a minor child.  On February 14, 2006, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning on September 18, 2002. (T at 37).[2]  The application was denied initially.  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  On May 8, 2008, a hearing was held in Syracuse, New York before ALJ Joseph G. Medicis, Jr.  Plaintiff and Claimant appeared at the hearing with their attorney. Plaintiff and Claimant testified. (T at 144-63).

On July 17, 2008, ALJ Medicis issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act.  (T at 13-23).   The ALJ's decision became the Commissioner's final decision on February 3, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 5-10).

On March 26, 2009, Plaintiff, acting on Claimant's behalf, timely commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on July 13, 2009. (Docket No. 9).  Plaintiff filed a supporting Brief on August 28, 2009.  (Docket No. 11).  The Commissioner filed a Brief in opposition on October 13, 2009. (Docket No. 13).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, this Court will proceed as if both parties had accompanied

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8)

their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, this Court recommends that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

4

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those

domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## B.   Analysis

### 1.   Commissioner's Decision

The ALJ noted that Claimant was born on March 7, 2000, and was therefore a "school-age child," as defined pursuant to 20 CFR § 416.926a(g)(2), at all times relevant to his decision.  The ALJ found that Claimant had not engaged in substantial gainful activity

at any time relevant to the decision. He further determined that Claimant had attention deficit hyperactivity disorder ("ADHD"), which the ALJ recognized as a "severe" impairment under the Social Security Act. (T at 23).

The ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equals one or more of the impairments set forth in the Listings. (T at 23).

As to the six domains of function: the ALJ determined that Claimant had: (1) no limitation in acquiring and using information; (2) less than marked limitation with regard to attending and completing tasks; (3) no objective limitation with respect to interacting and relating to others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for herself; and (6) less than marked limitation with regard to health and physical well-being. (T at 20-22).

In light of the foregoing, the ALJ found that Claimant had not been disabled, as defined under the Act, from the date the application for benefits was filed to the date of the ALJ's decision. (T at 22). As noted above, the ALJ's decision became the Commissioner's final decision on February 3, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 5-10).

### 2. Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. In support of this position, she offers three (3) principal arguments. First, Plaintiff argues that the ALJ did not properly apply the treating physician's rule. Second, Plaintiff contends that the ALJ

erred by concluding that Claimant's impairment did not meet Listing § 112.05.  Third, Plaintiff challenges the ALJ's functional equivalence assessment.  This Court will address each argument in turn.

### a.   Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. 20 C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

In this case, Dr. Alan Freshman completed a medical source statement in April of

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

2008, in which he opined that Plaintiff had a marked loss with regard to acquiring and using information; marked loss with respect to attending and completing tasks; moderate loss with regard to her ability to move at an efficient pace at home, school, and neighborhood; and a marked loss in terms of demonstrating consistent control over behavior and avoiding unsafe behaviors. (T at 136-38).

Dr. Freshman also noted marked inattention, marked impulsiveness, and marked hyperactivity; along with marked impairment in age-appropriate social functioning and marked difficulties in maintaining concentration, persistence, or pace. (T at 138-39).

The ALJ identified Dr. Freshman as "a physician whose treating relationship with the child is unclear . . . ." (T at 18).  The ALJ noted that Dr. Freshman's assessment of marked limitations was contradicted by Claimant's school records, which indicated a much lower level of impairment and generally appropriate academic performance and personal interaction. (T at 22).

For example, Claimant's kindergarten teacher gave her high marks with regard to such items as obeying school rules, demonstrating self-control, working and playing cooperatively, following directions, and completing tasks in a timely manner. (T at 102). Similar reports were provided by Claimant's first and second grade teachers. (T at 99, 95-A).  The ALJ assigned "[g]reat weight" to the teachers' findings and afforded "[l]ess weight" to Dr. Freshman's assessment. (T at 22).  The ALJ emphasized that it was "unclear what type of treating or examining relationship Dr. Freshman has with the child" and found Dr. Freshman's conclusions "not consistent with the objective medical evidence as a whole." (T at 22).

This Court finds that a remand is required for reconsideration of Dr. Freshman's

assessment and further development of the record.  It is well-settled that the ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. <u>Colegrove v. Comm'r of Soc. Sec.</u>, 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. <u>See</u> <u>Taylor v. Astrue</u>, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

The ALJ twice indicated his belief that the treating relationship between Claimant and Dr. Freshman was "unclear." (T at 18, 22).  Before deciding how much weight to afford Dr. Freshman's opinion, it was incumbent upon the ALJ to seek clarification regarding the length of the treatment relationship and the frequency of examination, as well as the nature and extent of the relationship. <u>See</u> 20 C.F.R. § 404.1527(d).

Moreover, it is difficult to understand why the ALJ felt the treating relationship was "unclear."  The record contains treating notes from Dr. Freshman covering the period between August 2, 2006, and February 13, 2008. (T at 127-33).  These treatment notes documented sleeping problems, anxiety, and impatience. (T at 131-33).  Generally, the notes indicated that Claimant performed well at school, but demonstrated significant difficulties during the afternoon and evening, when her medication was apparently less

10

effective. (T at 127-31).  This was consistent with Plaintiff's testimony, in which she indicated that Claimant was a "totally different child" after school hours, demonstrating much less impulse control after her medications have worn off. (T at 161-62).

The Commissioner notes an apparent contradiction between Dr. Freshman's medical source statement (rendered in April 2008) and his treatment note from February 2008, in which he opined that Claimant was "doing amazingly well." (T at 127).  However, the February 2008 treatment note also indicated that Claimant continued to demonstrate behavior/attitude problems during the afternoon hours. (T at 127).  In any event, before rejecting Dr. Freshman's assessment wholesale on that basis, the ALJ was obliged to recontact the physician and afford him an opportunity to address the apparent inconsistency.

There is no question but that the assessments of Claimant's teachers suggest a higher level of functioning than the opinion provided by Dr. Freshman.  However, the ALJ should have afforded Dr. Freshman an opportunity to address this discrepancy before discounting his opinion.  Moreover, the discrepancy is already addressed to some extent in the treatment notes, which indicate that Claimant performs well at school, but experiences difficulties at home when her medication becomes less effective. (T at 127-31).

Further, it is not clear whether the ALJ considered the impact of the structured educational setting on Claimant's behavior in school.  The "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's

functioning outside of the highly structured setting." <u>Smith v. Massanari</u>, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 20 C.F.R. § 416.924c).[4]  In other words, the ALJ was obligated to consider Claimant's level of functioning outside of her structured educational environment.  <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Straw</u> <u>v. Apfel</u>, No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y. Apr. 20, 2001).

As noted above, the reports from Claimant's school teachers indicate a level of performance inconsistent with Dr. Freshman's assessment of Claimant's limitations.  It may well be that, on remand, the ALJ will conclude that Dr. Freshman's opinion is not entitled to controlling weight, even when supplemented with additional information concerning the basis of his findings and the nature of the treating relationship.  However, pursuant to the applicable legal standard, any conclusion in this regard must be reached after the record has been more fully developed, after Dr. Freshman has been afforded an opportunity to address the apparent inconsistencies, and after proper consideration has been given to the effect of a structured setting on Claimant's performance in school.

The Commissioner also contends that the consultative examiner's assessments provide sufficient support for the ALJ's decision to discount Dr. Freshman's findings.  Dr. Jeanne Shapiro, the psychiatric consultative examiner, noted that Claimant's demeanor

------

[4]Section 416.924a (b)(5)(iv)(C) of the Social Security Regulations provides that:

A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

and responsiveness to questions was "cooperative," with "age-appropriate" social skills, manner of relating, and overall presentation. (T at 114).  Dr. Shapiro concluded that Claimant appeared to be capable of "adequately maintaining appropriate social behavior," "responding appropriately to changes in the environment," and "learning at her level of cognitive functioning as long a[s] she takes her medication." (T at 115).  She did note "difficulty attending to, following, and understanding age appropriate directions due to ADHD." (T at 115).  Dr. Kalyani Ganesh, the pediatric consultative examiner, indicated that Claimant "appeared to have [a] normal attention span for [her] age." (T at 118).

The assessments of consultative examiners may constitute substantial evidence when supported by the weight of the evidence.  However, in general, an opinion based upon a single examination deserves limited weight. See Crespo v. Apfel, No. 97 CIV 4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17,1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day."). Furthermore, "the opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override the treating physician's assessment. Garzona v. Apfel, No. 96 CV 6249, 1998 WL 643645, at *1 (E.D.N.Y. Sep. 18, 1998).

In the present case, the consultative examiners' findings and the assessments of Claimant's teachers provided support for the ALJ's conclusion.  However, as outlined above, the treating physician's opinion (which is presumptively entitled to controlling weight) was not adequately addressed, in that it was dismissed without proper development of the

13

record.  A remand should therefore be ordered.

### b.    Listing § 112.11

Impairments listed in Appendix 1 of the Regulations (the "Listings") are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

To meet the impairment set forth in § 112.11 (the Listing for ADHD), the record must contain: (A) medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity; (B) resulting in a marked impairment in at least two of the following: cognitive/communicative function, social functioning, personal functioning, or maintaining concentration, persistence and pace. See 20 C.F.R. pt. 404, Subpt. P, App. 1, at Listing 112.11; see also Brown v. Commissioner of Social Security, 430 F.Supp.2d 102, 104 (W.D.N.Y. 2005).

In this case, as discussed above, Dr. Freshman opined that Claimant demonstrated marked inattention, marked impulsiveness, and marked hyperactivity. (T at 138).  He also found marked impairment in age-appropriate social functioning and marked difficulties in maintaining concentration, persistence, or pace. (T at 139).  Plaintiff testified that Claimant experiences significant sleep difficulties and an inability to sit still for meals. (T at 155-56).  According to Plaintiff, Claimant has very specific bedtime rituals that must be obeyed or she has a fit. (T at 157).  Plaintiff described Claimant as a "totally different child" outside of

school, demonstrating much less impulse control after her medications have worn off. (T at 161-62).

Dr. Freshman's assessment and Plaintiff's testimony were strongly indicative of an impairment that met or medically equaled Listing §112.11.  As discussed above, the ALJ discounted Dr. Freshman's opinion without adequately developing the record.  The ALJ concluded that Plaintiff's testimony was "partially credible." (T at 22).  The ALJ explained this finding by referencing the school teachers' assessments and consultative examiner's observations.  However, the ALJ did not sufficiently account for the impact of the controlled environment on Claimant's school performance or address Plaintiff's testimony that Claimant exhibited much more severe limitations outside of school.  In addition, the ALJ did not properly address the fact that Plaintiff's testimony was supported by Dr. Freshman's assessment.  Accordingly, the question of whether Plaintiff's impairment met or medically equaled Listing §112.11 should be revisited on remand after further development of the record.

### c.   Functional Equivalence

If the claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must still determine whether the impairment or combination of impairments are functionally equivalent to a Listing.  Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ determined that Claimant had: (1) no limitation in acquiring and using information; (2) less than marked limitation with regard to attending and completing tasks; (3) no objective limitation with respect to interacting and relating to

others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself; and (6) less than marked limitation with regard to health and physical well-being. (T at 20-22). This functional equivalence assessment is not supported by substantial evidence and should be revisited on remand.

### i.      Attending to and Completing Tasks

In this domain, the Commissioner considers the claimant child's ability "to focus and maintain . . . attention," and how well he or she can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).

A school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments). The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. §416.926a (h)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a claimant might have limited functioning if he or she is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; slow to focus on, or fails

to complete activities of interest; repeatedly becomes sidetracked from activities or frequently interrupts others; becomes easily frustrated and gives up on tasks; and requires extra supervision to remain engaged in an activity. 20 C.F.R. §416.926a (h)(3).

In the present case, Dr. Freshman opined that Claimant had marked limitations with respect to concentrating on details, sustaining attention well enough to complete chores and read alone, changing activities and routines without distracting herself or others, and applying focus to remember and organize materials. (T at 137). Plaintiff testified that Claimant had significant difficulty with changes in her routine (particularly at bedtime) and attending to her meal during dinner. (T at 155-57). Dr. Shapiro, the consultative examiner, observed that Claimant had "difficulty attending to, following, and understanding age appropriate directions due to ADHD." (T at 115). These findings contradict the ALJ's conclusion that Claimant had a less than marked limitation with regard to attending and completing tasks. The ALJ relied heavily upon the assessments of Claimant's teachers without (apparently) considering the impact of the structured school setting and the change in Claimant's behavior during the afternoon hours, as set forth in Plaintiff's testimony. In addition, as discussed above, the ALJ did not properly address Dr. Freshman's findings concerning this domain, which were certainly inconsistent with the ALJ's conclusion. Accordingly, Claimant's limitations with regard to this domain should be revisited and reassessed on remand after further development of the record.

### ii.    Acquiring and Using Information

This domain considers the child's ability to acquire or learn information and how well the child uses the information she has learned. 20 C.F.R. § 416.926a(g).

A school-age child (*i.e.* at least six, younger than twelve) should be able to read,

write, perform math, and discuss history and science.  The child should be able to demonstrate these skills both in academic situations and in daily living.  20 C.F.R. § 416.926a(g)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a claimant might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and has difficulty explaining what he or she means.  20 C.F.R. § 416.926a(g)(3).

In this case, Dr. Freshman assessed a marked loss with respect to Claimant's ability to understand, remember, and carry out very short and simple instructions; maintain attention and concentration; perform activities within a schedule, maintain regular attendance, and be punctual; work/study in coordination with or proximity to others without being unduly distracted by them; and complete a normal school day and school week without interruptions from psychologically based symptoms. (T at 137).

The ALJ discounted Dr. Freshman's assessment and found that Claimant had no limitations with regard to this domain of functioning, relying heavily upon the assessments of Claimant's teachers. (T at 20).  While assessments provided by teachers are particularly useful in evaluating a claimant's limitations with regard to this domain, the ALJ erred by discounting Dr. Freshman's conclusion without (a) giving Dr. Freshman an opportunity to explain the inconsistency, (b) developing the record concerning the nature of Dr. Freshman's treating relationship, which the ALJ found to be "unclear," and (c) giving explicit consideration to the impact of a structured setting on Claimant's abilities.   Further

18

consideration on remand is therefore warranted.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" <u>Butts v. Barnhart</u>, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for further proceedings.

Respectfully submitted,

Dated:   August 10, 2011

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C.

§636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

August 10, 2011

Victor E. Bianchini
United States Magistrate Judge

21